Nathaniel **HOWARD**

v.

**LOCKHEED–GEORGIA CO.** and International Association of Machinists and Aerospace Workers, Local No. 709.

Civ. A. No. 17512.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 19, 1974.

Isabel Webster, Patterson, Parks & Franklin, Atlanta, Ga., for plaintiff.

R. Lawrence Ashe, Jr., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., Robert P. Barton, Marietta, Ga., Lockheed Georgia Legal Dept., for defendant Lockheed.

Adair, Goldthwaite, Stanford & Daniel, P. A., Patrick M. Scanlon, Atlanta, Ga., for Local No. 709.

ORDER OF COURT

MOYE, District Judge.

This case is presently before the Court on a motion by defendant Lockheed-Georgia Company for reconsideration of this Court's order of October 16, 1973, deferring until the time of trial decision on the motion to dismiss paragraph 12 of the complaint and on a mo-

tion by the International Association of Machinists and Aerospace Workers, Local No. 709 [hereinafter Lodge 709] seeking dismissal of paragraph 13 of the amended complaint.

The motion filed by Lockheed-Georgia Company urges prompt resolution of the damage issues raised by its previous motion to dismiss on the grounds that it will incur an additional $5,000 in discovery expenses, perhaps needlessly, should it ultimately prevail in its position. For this reason, and because the motion for reconsideration is unopposed, the Court will consider herein the question of whether paragraph 12 of the amended complaint should be dismissed.

The instant suit seeks redress for alleged unlawful employment practices and is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, 2000e–3 to 2000e–5(f), 42 U.S.C. § 1981, 28 U.S.C. § 1343(4), and 28 U.S.C. §§ 2201 and 2202. Plaintiff also proceeds under 29 U.S.C. § 151 et seq., charging Lockheed-Georgia with participating or acquiescing in Lodge 709's violation of its duty of fair representation.

Paragraph 12, the subject of Lockheed-Georgia's motion to dismiss, contains an allegation that the plaintiff has suffered emotional stress and injury as a result of the alleged racially discriminatory policies.

Briefs in support of the motion to dismiss argue that injuries of this nature are not compensable under the above-cited statutes and that plaintiff's prayer for compensatory and punitive damages must be stricken.

■ With respect to proceedings under the National Labor Relations Act, Lockheed-Georgia's point is well taken. Section 10(c) of the Act, 29 U.S.C. § 160(c), authorizes discretionary awards of back pay and other affirmative relief, but nowhere does it provide for the recovery of compensatory or punitive damages. *E. g.*, Automobile Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); United Workers v. Laburnum Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). This determination is relevant to plaintiff's Title VII claims, as will be demonstrated below.

It is undisputed that 42 U.S.C. § 2000e–5(g), as amended by the Equal Employment Opportunity Act of 1972, applies to the instant case; it provides in pertinent part as follows:

> "[T]he Court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."

A cursory reading of the above-cited statutory language reveals that no provision is made for the award of general compensatory damages let alone punitive damages. Such an interpretation comports with this Court's construction of pre-amendment § 2000e–5(g) in Guthrie v. Colonial Baking Co., C.A. 16455 (N.D.Ga. Aug. 9, 1972). See also Attkisson v. Bridgeport Brass Co., 5 EPD ¶ 8522 (S.D.Ind.1972).

In *Attkisson, supra,* the court pointed out that pre-amendment § 2000e–5(g) provided a limited equitable remedy and found that "[t]he remedial intent of Title VII was to eliminate discriminatory practices rather than create a cause of action for personal injuries otherwise actionable." 5 EPD ¶ 8522 at p. 7482. Indeed, the United States Court of Appeals for the Fifth Circuit has emphasized that a claim for back pay pursuant to Title VII "is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy. . . ." Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969).

Further support for this conclusion is found in Van Hoomissen (Equal Employment Opportunity Commission) v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal. 1973). The *Van Hoomissen* court's analysis of the language and statutory

history of Title VII yielded a finding that Title VII was modeled after Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160, under which, as noted above, compensatory and punitive damages are not allowable. It was also noted in *Van Hoomissen* that in 1968 Title VII was amended to allow the award of compensatory and punitive damages, whereas, the 1972 amendments to Title VII omit any such damage provisions.

■ This Court is of the opinion that had Congress intended Title VII to authorize actions for compensatory and punitive damages of the kind prayed for here, it would have made clear that desire. The omission of any such provision in a statute which sets forth the types of relief which may be afforded to an aggrieved person must be deemed to have been intentional.

Accordingly, paragraph 12 of the complaint must be dismissed insofar as it purports to state a claim for compensatory and punitive damages under 42 U.S.C. § 2000e et seq.

Plaintiff's claim for compensatory and punitive damages under 42 U.S.C. § 1981 raises difficult questions with respect to the reach and breadth to be afforded that statute and its interrelation with Title VII. 42 U.S.C. § 1981 provides in pertinent part as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory *to make and enforce contracts . . .* as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (emphasis added)

Section 1981 and its statutory sibling, 42 U.S.C. § 1982 [1] had their common genesis in the Civil Rights Act of 1866.[2] The full potential of these statutory provisions was not realized until 1968, however, when the Supreme Court decided in Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), that Section 1982 forbids purely private acts of discrimination. Finding that the common origin of Sections 1981 and 1982 dictate a consistent construction, the Circuit Courts of Appeal which have reached the issue have unanimously concluded that state action is not a necessary ingredient to a Section 1981 suit. Young v. Int'l Tel. & Tel., 438 F.2d 757 (3d Cir. 1971); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971); Waters v. Wisconsin Steel Works, 427 F.2d 476 (7th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). The *Waters, Sanders,* and *Young* opinions also held that Section 1981 applies to employment discrimination cases of the kind presently under consideration.

But there has been no definitive pronouncement as to the types of damages which may be recovered under Section 1981 in an action to redress racially motivated employment discrimination. Analysis of many reported cases is rendered difficult by the fact that the plaintiffs therein proceeded under several of the civil rights statutes, and many opinions use the term "damages" generically without specifying whether it is meant to embrace general compensatory and punitive damages or merely a more limited award of back pay.

■ Neither Section 1981 nor Section 1982 contains any provision authorizing the award of damages or any other form of relief. Nevertheless, the Supreme Court made clear in Jones v. Alfred Mayer Co., *supra,* and Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), that

---

1. Section 1982 reads: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

2. The statutory history of Sections 1981 and 1982 is extensively analyzed in Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

both equitable relief and compensatory damages may be awarded for violations of Section 1982. In so doing, the *Sullivan* opinion explicitly relied on 28 U.S.C. § 1343(4) which creates federal jurisdiction for "damages or . . . equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ." and on 42 U. S.C. § 1988.[3] With respect to the latter, Justice Douglas observed:

> "This means, as we read § 1988, that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. Cf. Brazier v. Cherry, 5 Cir., 293 F.2d 401. The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." 396 U.S. at 240, 90 S.Ct. at 406.

The Court believes that the federal rule of damages set forth in Title VII is the proper standard to be applied in this Section 1981 action.

In Caldwell v. National Brewing Co., 443 F.2d 1044 (5th Cir. 1971), the United States Court of Appeals for the Fifth Circuit held that a plaintiff who had deliberately bypassed the administrative procedures of Title VII could nevertheless proceed under 42 U.S.C. § 1981. Although *Caldwell* specifically rejected the exhaustion requirements imposed by the Seventh Circuit in Waters v. Wisconsin Steel Works, *supra*, it advised that in proper situations relief under Section 1981 be stayed during the pendency of the Title VII conciliatory process. Page 1046 of the *Caldwell* opinion

recommended this approach as one which "melds the Title VII policy into the § 1981 remedy." Thus, it appears that this circuit, while recognizing Section 1981 as an independent jurisdictional basis for employment discrimination suits, encourages harmonization of the remedies to be afforded under it and Title VII.

Significant also is the Third Circuit's decision in Young v. Int'l Tel. & Tel., *supra*, which was cited with approval in *Caldwell*. The *Young* opinion enumerated the differences in the scope of the remedies afforded by the two statutes, including the applicable statutes of limitations and the provision in Title VII authorizing appointment of counsel and the award of attorney's fees. Conspicuously absent, however, was any mention of compensatory or punitive damages.

The Court is not unmindful of the Fifth Circuit's holding in Sanders v. Dobbs Houses, Inc., *supra*, that the enactment of the Civil Rights Act of 1964 did not preempt or repeal by implication whatever remedies previously existed under Section 1981. The plaintiff in *Sanders*, however, did not point to any "specific area of irreconcilable conflict" between the statutes. Were this Court to allow the recovery sought in the instant action under Section 1981, such a conflict would indubitably be created; for to judicially legislate a concurrent and broader remedy under Section 1981 would invite every plaintiff asserting a claim for racially discriminatory employment practices to ignore the remedy which Congress so carefully constructed

---

3. 42 U.S.C. § 1988 provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

in Title VII. Why should a claimant genuinely participate in the conciliation procedures of Title VII, or his attorney advise him to do so, when larger awards await if he refuses and proceeds to suit? Such a holding would frustrate the clear intent of Congress that racial bias problems be resolved by conciliation. This the Court declines to do.

Accordingly, Lockheed-Georgia's motion to dismiss paragraph 12 of the complaint is hereby granted.

■ Paragraph 13 of the complaint states that the plaintiff has received and will continue to receive medical and hospital care and treatment for injuries proximately caused by the alleged acts of unlawful discrimination. It is further alleged that such care and treatment is being furnished by the United States and that the Government has authorized the plaintiff to assert a claim on its behalf pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, et seq. 42 U.S.C. § 2651 provides in pertinent part as follows:

"(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefore, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.

The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

"(b) The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors."

Lodge 709 argues that its motion to dismiss must be granted for two reasons: (1) MCRA creates a cause of action which may be asserted only by the United States and (2) any claim brought under the Act must be based on tort.

With respect to the second ground for dismissal, the statute is unambiguous. The United States may assert a claim for medical care rendered only under those circumstances creating a tort liability upon some third person. This is an employment discrimination case brought under the civil rights laws; no cause of action sounding in tort is stated, and the plaintiff has not seriously argued that tort liability could be imposed under the facts of this case. Not only would prosecution of this claim run

afoul of the express statutory language, it would also interject issues outside the scope of those normally attendant to employment discrimination cases. Therefore, plaintiff has failed to state a claim under the Medical Care Recovery Act and Lodge 709's motion to dismiss paragraph 13 of the complaint is granted.

■ The motions presented above involve controlling questions of law as to which there are substantial grounds for difference of opinion, and appeal from this order may materially advance the ultimate termination of the litigation. Accordingly, the Court certifies said motion for interlocutory appeal pursuant to 28 U.S.C. § 1292.